IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>JOHN THOMAS PAVELCHAK,<br><br>  Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS<br><br><br><br>Case No. 2:05-CR-96 TS |

This matter came before the court on June 1, 2005, for an evidentiary hearing on Defendant's Motion to Suppress. Subsequent to the hearing, the parties have fully briefed all issues.

I.  FINDINGS OF FACT

At about 3:00 or 3:30 a.m. on January 17, 2005, the West Valley City Police received a call from an employee of a West Valley City hotel. The employee, who had been staying on the fourth floor of the hotel, reported that a man was disturbing guests by repeatedly knocking on the door of one of the fourth floor rooms.

1

An officer and his supervisor responded.  The officer was assigned to the City's community oriented police unit.  The hotel was located in an area with several other hotels.  The officer had previously been called to the area several times.

When they arrived at the hotel, the officers were greeted by the night clerk.  He told them that a man was disturbing other guests by continually knocking at a hotel door for the past 30 to 40 minutes.  The night clerk told them that the man was still present and knocking.  The officers asked him to telephone the room where the person was knocking.  The night clerk called approximately 20 times and let it ring up to ten times, but there was no response.  The night clerk was concerned for the safety of the room's occupant, but did not say so to the officers.

The hotel's rooms were located on four or five floors and were reached via an inside center hallway.  The officer and his supervisor went to the room in question where they found a man sitting against the door to the room.  They asked the man for his name and he identified himself and handed them identification.  He told them that he was a friend and co-worker of the occupant of the room, and that he had a key to the room, but was unable to open the door because it was locked from the inside.  He told them that the occupant had telephoned him and asked him to buy dog food and bring it over.  The friend had the dog food with him.  He said that the occupant was a heavy sleeper, that he could not wake him, and that he thought the occupant was still in the room.

The officer began to knock on the door and call the occupant's name trying to awaken him.  Other officers arrived to assist.  Some of the hotel guests opened their doors in response to the noise.  The officer apologized for the noise but continued his efforts to

obtain a response from inside the room. The friend told one of the officers that the occupant's wife had recently kicked him out of the house. At some point the officer patted down the friend for weapons and found a small scale, commonly used in connection with drugs, which the friend claimed to have found in the parking lot.

After the officer had been knocking for about 15 to 20 minutes, the supervisor went to get the night clerk, obtained the occupant's name, and ran a check on the name. The supervisor found out that a person with the same name had a history of drug related crimes. The supervisor returned and conveyed that information to the officer. He also conveyed that the night clerk had informed him that an earlier clerk had left a note about the occupant of the room. The note stated that the occupant of the room had said he was a police officer, with a rescue dog, and that any unusual traffic in the room was "OK" because he was there to help with an avalanche rescue.

By the time the night clerk arrived at the door with his pass key, the officer was concerned about the health and welfare of the room's occupant, and wanted to be sure the occupant was all right and didn't need any assistance. The friend told the officer that he was concerned about the occupant because he had not answered the door despite the continual knocking and yelling through the closed door. The officer spoke with his supervisor and the other officer about his concern for the occupant. They agreed with the concern and the officer asked the night clerk to open the door. The night clerk complied, but the door opened only three inches because it was held by an inside chain. The officer looked in the dark room and couldn't see anything. The officer called the occupant's name again and again and continued knocking, but there was no response.

The officer told his supervisor that he was concerned that the occupant may need medical assistance inside the room.  The supervisor gave permission to cut the chain. The supervisor retrieved bolt cutters from his vehicle and the officer, believing there was an immediate need to render assistance to the occupant, cut the chain.  When he entered, he saw a man lying on a couch who appeared to be unconscious and the officer could not tell if he was breathing or not.  As the officer walked up to him calling his name, he did not respond.  The officer went to him, and started shaking his shoulder and the person began to rouse, disoriented.  When the officer identified himself as a policeman, the occupant finally alerted.  The officer explained that they had been called by the night clerk and that his friend had been knocking for half an hour.  The officer asked the occupant if he needed any assistance.   The occupant--the Defendant--told the officer he did not need any help. However, by this time the officer had noticed what appeared to be illegal drugs and drug paraphernalia lying next to the couch.

The court finds the officer's testimony to be credible in all respects, including that he was motivated to gain entry by concern for the health or safety of the occupant.   The court finds that the entry was not motivated by any "intent to arrest and seize evidence."

## II.  DISCUSSION AND CONCLUSION

Defendant moves to suppress the evidence found in the hotel room.  He contends that the entry into the hotel room was a violation of the Fourth Amendment because it was not justified by exigent circumstances.  The government contends that the entry was justified by exigent circumstances.

"A hotel room can clearly be the object of Fourth Amendment protection as much as a home or an office." *Hoffa v. U.S.*, 385 U.S. 293, 301 (1966) (citing *United States v. Jeffers*, 342 U.S. 48 (1951)). "An overnight guest in a hotel room . . . has a legitimate expectation of privacy in the premises." *United States v. Carr*, 939 F.2d 1442, 1446 (10th Cir. 1991).

> "It is a basic 'principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Id.* at 590.
>
> * * *
>
> The government bears the burden of establishing exigency. In our assessment of whether the burden is satisfied, "we are guided by the realities of the situation presented by the record." *Wicks*, 995 F.2d at 970. "We should 'evaluate the circumstances as they would have appeared to prudent, cautious and trained officers.' " *United States v. Cuaron,* 700 F.2d 582, 586 (10th Cir. 1983) (quoting *United States v. Erb,* 596 F.2d 412, 419 (10th Cir. 1979)). We have determined the basic aspects of the "exigent circumstances" exception are that (1) the law enforcement officers must have reasonable grounds to believe that there is immediate need to protect their lives or others . . . , (2) the search must not be motivated by an intent to arrest and seize evidence, and (3) there must be some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched. *Wicks*, 995 F.2d at 970 (quoting *United States v. Smith,* 797 F.2d 836, 840 (10th Cir. 1986)). Nevertheless, "there is no absolute test for the presence of exigent circumstances, because such a determination ultimately depends upon the unique facts of each controversy." *Wicks,* 995 F.2d at 970.

*U.S. v. Rhiger,* 315 F.3d 1283, 1287-88 (10th Cir. 2003) (citations partially omitted).

The court finds and concludes that the entry was justified by exigent circumstances based upon the facts known to the officer when he entered the room. Those fact include

the following:  The friend had told the officer that the occupant called him and asked him to come to the room to bring him dog food, and that the occupant had not responded, despite the friend's great efforts to wake him.  The officer's own repeated attempts to get a response were unsuccessful, although they did evoke a response from the other hotel guests on the same floor.  The friend had told the officers that the occupant had recently been kicked out of his house, a situation which caused the officer to be concerned for the safety of the individuals involved in marital discord.  The friend had the type of scale used in connection with drugs and a person with the occupant's name was reported to have been involved in drug crimes.  The friend had eventually expressed concern that the occupant would not respond.

     Under these circumstances, a "prudent, cautious and trained officer" would have been justified in believing that there was an immediate need to enter the room to protect the life or health of another.  Having the information about the occupant being kicked out of his house by his wife, and the possibility of drug involvement, a reasonable officer would have been concerned about such possible emergencies as a drug overdose, intentional or not, or other emergency involving the person inside.  The officer had reasonable grounds to believe that there was an "immediate need to protect" the life of another.  *Id.*

     Furthermore, although he did not express his concern to the officers, the hotel clerk was also concerned for the occupant's safety when he did not respond to his friends repeated and prolonged attempts to wake him.  This independent concern, as well as the concern subsequently expressed by the occupant's own friend, support the officer's testimony that he was motivated by his concern for the immediate safety of the

unresponsive occupant.  Thus, the entry and search were not motivated by any "intent to arrest and seize evidence." *Id.*

Finally, the court finds that, based upon the entire situation as it appeared to the officer on the scene, he had some "reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched." *Id*.

Based upon the entire record, the court finds and concludes that the government has met its burden of establishing exigent circumstances.  Accordingly, there was no violation of the Defendant's Fourth Amendment rights.

### III.  ORDER

Based upon the foregoing, it is therefore

ORDERED that the Defendant's Motion to Suppress is DENIED.  It is further

ORDERED that the time from the filing of the Motion to Suppress through the date of the entry of this Order is excluded from the computation of the Speedy Trial Act time pursuant to 18 U.S.C. § 3161(h)(1)(F) and (J)

DATED  August 11, 2005.


BY THE COURT:

_____
TED STEWART
United States District Judge